UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE D. HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | NO. CV 15-5611 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Henderson filed this action on July 24, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on August 10 and August 12, 2015. (Dkt. Nos. 9, 10.) On January 26, 2016, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court remands this matter to the Commissioner for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

On March 29, 2010, Henderson filed an application for disability insurance benefits, alleging an onset date of October 4, 2009. Administrative Record ("AR") 309-13. The application was denied initially and on reconsideration. AR 133-42. Henderson requested a hearing before an Administrative Law Judge ("ALJ"). On March 8, 2012, the ALJ conducted a hearing at which Henderson, a medical expert and a vocational expert testified. AR 75-103 . On May 10, 2012, the ALJ issued a decision denying benefits. AR 109-23. On April 23, 2013, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. AR 129-32.

On February 4, 2014, a second hearing was held before a different ALJ. Henderson, a medical expert and a vocational expert testified at the hearing. AR 49-74 . On February 21, 2014, the ALJ issued a decision denying benefits. AR 25-46. On May 27, 2015, the Appeals Council denied the request for review. AR 7-11. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering

adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Henderson met the insured status requirements through September 30, 2015. AR 30. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Henderson had the severe impairments of asthma and obesity. AR 31.

The ALJ found that Henderson had the residual functional capacity ("RFC") to perform medium work except that she can occasionally lift 50 pounds and frequently lift 25 pounds; she can stand no more than six hours; she can sit no more than six hours; and she must avoid all exposure to fumes, odors, dust, gases and poor ventilation. AR 33. Henderson was able to perform past relevant

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

work as a workers' compensation/insurance adjustor as actually performed and as generally performed. AR 37-38. That job is categorized as sedentary. AR 37.

### C.  Treating Physicians

Henderson contends the ALJ erred in rejecting the opinions of her treating physician, Dr. Tremazi.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Dr. Tremazi, Henderson's treating rheumatologist, diagnosed dermatomyositis. Her muscle enzymes and C-reactive protein were elevated. Her pain was at 8/10 with persistent diarrhea. Dr. Tremazi opined Henderson was not capable of her past work as a claim adjuster "because of her weakness and her generalized pain." AR 693.

The ALJ erred in rejecting the diagnosis of dermatomyositis. The ALJ relied on the opinion of Dr. Plotz, the non-examining medical expert, and concluded that Henderson's dermatomyositis was not a medically determinable impairment "as the objective data in the file do not confirm [this diagnosis]." AR 32. The opinion of a non-examining physician cannot by itself constitute

substantial evidence sufficient for rejecting a treating physician's opinion. *Lester*, 81 F.3d at 831. Moreover, Dr. Plotz did not rule out dermatomyositis and stated only that her physician "doesn't have a firm grip on what is wrong with her; nor do I." AR 59. Dr. Plotz acknowledged that, in 2009, Henderson had elevated creatine phophokinase ("CPK") and that one reason for elevated CPK "is myositis or inflammation of the muscle." AR 57. Dr. Plotz then stated that Henderson had no evidence of inflammation of the muscle and very little weakness (4/5) in muscle strength. *Id.* Dr. Plotz testified that, in 2011, a different physician, Dr. Hou, "has never conclusively shown that she has any of these diseases, but she might have low grade mixture of these diseases" including dermatomyositis. AR 58. "So, perhaps this is what is. I don't know from the record any more than if it's clear that Dr. Hou knows." AR 59.

All of Henderson's laboratory tests, contained in the record and dating from October 2009 through January 2014, revealed chronically elevated levels of creatine kinase (CK) and c-reactive protein. Specifically, her CK levels ranged from 400 U/L to over 2,000 U/L, where normal values are usually between 24 and 173 U/L.[2] AR 419, 421, 468-69, 472-73, 476-77, 555, 651, 698-99, 869, 872, 881, 893-94, 1055, 1126-27, 1129, 1132, 1134, 1279. On November 13, 2009, she had an abnormal electromyogram (EMG), showing characteristic patterns of dermatomyositis. AR 498, 834. Additionally, in November 2009, she presented with a "v-neck sign" and a "shawl sign," and in January 2011, she had "hyperpigmented papules over the extensor surfaces of the [proximal interphalangeal joints]" and the "remnants of [a] rash over the anterior lower cervical area." AR 481, 834. Further, on numerous occasions throughout her treatment, she was determined to have significant proximal muscle weakness

---

[2] Dermatomyositis often causes elevated levels of certain muscle enzymes, including creatine kinase, indicating muscle damage. *See, e.g., The Merck Manual of Medical Information*, 236-37 (Home ed. 1997).

5

upon physical examination. AR 831, 861, 863-64, 906-07, 911, 914, 1072, 1078, 1086, 1107-08, 1112, 1115, 1118, 1121, 1124, 1163, 1173, 1188, 1191. None of the other medical opinions in the record appear to disagree with Dr. Tremazi's diagnosis of dermatomyositis. *See* AR 586, 610, 613, 831, 1175.

The court cannot say that the ALJ's error in rejecting Dr. Tremazi's diagnosis of dermatomyositis was harmless. It appears from the record that the ALJ did not consider the limitations associated with Henderson's dermatomyositis in the RFC determination. *See* AR 34 (noting only effects of Henderson's asthma and obesity in her RFC). Because proper consideration of Henderson's dermatomyositis could result in a different RFC, the error was not harmless. *See, e.g.*, *Krenz v. Colvin*, 2014 WL 2889759, at *3 (C.D. Cal. June 25, 2014). Accordingly, remand is warranted on this issue.

### D.     Remedy

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)(citing *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th Cir. 2000)). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Harman*, 211 F.3d at 1179. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* (decision whether to remand for further proceedings turns upon their likely utility).

Remand is appropriate because there are outstanding issues that must be resolved. "Where there is conflicting evidence, and not all essential factual issues have been resolved," a remand for further administrative proceedings is appropriate. *See Treichler*, 775 F.3d at 1101.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 25, 2016

ALICIA G. ROSENBERG
United States Magistrate Judge